## MOORE *vs.* BARCLAY ET AL.

1. G., under a levy made before the expiration of his term of office as sheriff, and S. his successor, under subsequent levies of other executions, sold the lands of the defendant, of which M. became the purchaser at the sale made by G., and B. at that made by S.. B. paid no money on his bid, but received a deed for the lands from S. and commenced an action against M. to recover possession: M. and B. compromised the suit by B. executing to M. a quit-claim to the land, and by M. confessing a judgment to B. for the amount of his bid at the sale made by S., with the understanding that this judgment was not to be enforced unless S. should be compelled to pay the amount of the bid to some creditor whose execution was in the hands of S. at the time of the sale, and should call on B. for reimbursement: M. then procured an assignment to himself of the only operative judgment and execution which could claim the money arising from said sale; and B. afterwards settled with S. the amount of the bid, by delivering up to him evidences of debt which he held against him, and caused execution to be issued on the judgment confessed by M. and levied on his property. *Held*—That on this state of facts a Court of Equity has jurisdiction of a bill filed by M. to restrain B. from enforcing said judgment; and that the answer of B. to such a bill, which merely denies that the judgment was confessed "upon the distinct agreement" alleged, is insufficient to authorise a dissolution of the injunction.

Error to the Chancery Court at Talladega. Before the Hon. David G. Ligon, Chancellor.

THE bill in this case was filed by plaintiff against defendants in error, and alleges, that on the 15th February 1844, he confessed a judgment in the County Court of Talladega in favor of the defendant, Barclay, for $1048, on which Barclay has had execution issued and handed to the sheriff, who has levied the same on slaves belonging to plaintiff, and will sell the same unless restrained, and that the judgment was confessed under the following circumstances: Executions had been issued upon certain judgments in favor of divers plaintiffs against William H. Moore, and placed in the hands of David A. Griffin, sheriff of Talladega county, and other executions in favor of different plaintiffs and against the same defendant had afterwards issued and been placed in the hands of Solomon Spence, the successor in office of said Griffin. Prior to

the time of his going out of office, Griffin had levied the executions in his hands on certain lands as the property of William H. Moore; and Spencer also, after he came into office, levied the executions in his hands on the same lands. Griffin and Spence both sold the lands, and plaintiff purchased at the sale of the former, and Barclay at that of the latter, at the price of $1,000, no part of which, however, was ever paid by Barclay. Barclay commenced an action against the tenant of plaintiff to recover possession of the lands, but before the trial term of the case, the said Barclay and plaintiff agreed between themselves that plaintiff should assume to Barclay a debt due to him from William H. Moore, the precise amount not recollected, and save him harmless against the bid made by him at the sale of Spence, whenever Spence should be called upon by any of the creditors, who had executions in his hands, for the proceeds of the sale, and in consideration therefor, Barclay dismissed the suit, and executed a quit-claim deed to the plaintiff for the lands. In pursuance of this agreement, the plaintiff assumed the amount due by William H. Moore to Barclay, and paid the greater portion thereof; and on the suggestion of Barclay, that, as he or Spence might be compelled to pay the money bid for the lands at any time when called on, and that he ought to be placed in a situation that would enable him to force it out of plaintiff as soon as it could be forced out of him or Spence, Plaintiff confessed the judgment, on which the execution now complained of has issued, with the distinct understanding that no money should be paid upon said judgment, unless the said Spence should be compelled to pay the amount of the bid by Barclay to some of the creditors whose executions were at the time of the sale in Spence's hands, and should call on Barclay for the amount of his bid. The bill further alleges, that a contest arose among the creditors whose executions were in Spence's hands, as to the proceeds of sale of the lands mentioned in the bill, and other lands of the defendant William H. Moore sold at the same time, and it was decided eventually in the Supreme Court, that the execution in favor of one Campbell, use, &c. against Wm. H. Moore and one Chandler should be first paid, but that said Campbell was subsequently, on bill filed by said Chandler, perpetually enjoined from collecting said execution : that the Branch Bank

at Montgomery was also a judgment creditor, whose execution was in the hands of Spence at the time of said sale, and that its execution which amounts to more than the bid of Barclay, is entitled to the proceeds of the sale, and that the plaintiff is by purchase from the Bank, the assignee of said judgment and execution, and is the person who alone is entitled to call on Spence or Barclay for the amount bid at said sale, all which facts are well known to Barclay: that Spence is insolvent, and since he has become so, there has been a pretended payment to him by Barclay of said bid, but the plaintiff charges that no money was paid thereon, and that the settlement was made by Barclay giving up to Spence evidences of debt which he held against Spence and had held for several years, &c.

The bill prays a perpetual injunction of said judgment and that defendant Barclay be temporarily enjoined from enforcing its collection, the latter of which was only granted, &c.

The answer of Barclay admits that the plaintiff confessed the judgment but for $1048 15-100 instead of the amount named in his bill, and that execution has issued and been leved as alleged. It states that after his purchase at the sale of Spence and the institution of the suit for the recovery of the lands, plaintiff and himself made a verbal agreement by which plaintiff agreed to pay him the amount of his bid at the sale which was $917 12-100, and also to pay all the debts due by said William H. Moore to him, Barclay, and to Barclay, Stinnelt & Co., and he on his part agreed, that if plaintiff did so, he would execute to him a quit claim deed for the lands: that in pursuance of said agreement he executed to plaintiff a quit claim deed for a portion of the lands, and some time afterwards upon the representation of plaintiff that he was unable to make the payments in accordance with the agreement, and upon his request that defendant would indulge him longer and also execute a quit claim for the balance of the lands, which he, plaintiff, had already contracted to sell, defendant executed the quit claim deed to the balance of the lands, liquidated with him the debts owed to Barclay and to Barclay, Stinnelt & Co. and took from him the confession of judgment for the amount of his bid with interest thereon. The defendant denies that plaintiff confessed said judgment " upon

the distinct agreement" that no money should be paid on said judgment, unless the said Spence should be compelled to pay the amount bid by defendant at the sale of said land to some of the creditors, whose executions were in Spence' hands against William H. Moore at the time of the sale of the lands: no such agreement was made by defendant with said plaintiff as is incorrectly alleged in said bill, nor was any other agreement made with him than the one above set out in relation to said confessed judgment: that at the time of this agreement, defendant informed plaintiff, what was then really true, that he had not paid Spence the amount of his bid, but had promised to do so whenever he called on him for it, and this was the reason why he wished the confession of judgment: that he does not know whether plaintiff is the owner by purchase of the judgment in favor of the Bank: that after Spence became notoriously insolvent, to wit, on the 21st September 1846, a judgment was rendered in favor of John F. Tompkies against said Spence and defendant as his security on a note, for nine hundred ninty-nine dollars and eighteen and three-fourths cents, which defendant paid off on the 14th Jan. 1847, under an arrangement with said Spence, that this payment was to go towards the discharge of the amount of said bid, and the balance of the bid, with interest to be calculated on it was to be credited on debts due by Spence to defendant, &c.

Upon the coming in of the answers of Barclay and Spence, the latter of which was excepted to, a motion was made before the chancellor in vacation to dissolve the injunction, which motion was sustained and the plaintiff entered an appeal therefrom and now assigns it as error.

L. E. Parsons, for plaintiff.

Rice & Morgan, for defendants.

COLLIER, C. J.—The bill certainly states a case of which a court of chancery may take jurisdiction. It alleges a contract between the complainant and Barclay in positive terms under which the former confessed the judgment, and avers that it has been violated by Barclay, in causing an execution to be issued on that judgment though Spence was not called on for payment by any of the creditors whose executions were

entitled to the proceeds of the land which Barclay bid off. The allegations of the bill are explicit, that the quit claim deed was executed to the complainant upon his assumption to pay Barclay a debt due him by W. H. Moore, and the confession of the judgment to be paid when the execution creditors who were entitled, should call on Spence for payment. It is alleged that the debt of W. H. M., has been assumed and the greater part of it paid: that no requisition has been made upon Spence, and none can be made, as the complainant is assignee of the Branch Bank at Montgomery of the only judgment and execution now operative, which was in his hands at the time the land was sold.

It is supposed that these facts, even when coupled with the insolvency of Spence are insufficient to sustain the jurisdiction, but it should be also alleged that the sureties in the official bond of Spence were insolvent, so that the complainant could not enforce the payment of the judgment of which he is assignee either by motion or suit against them. This argument we think cannot be supported. The complainant seeks relief upon the ground that his contract with Barclay has been violated by the attempt to enforce a payment of the judgment in favor of the latter by execution. If the event has not occurred upon which an execution could rightly issue, the complainant must have some remedy, by which he can arrest it. Here, the objection does not embrace matter arising subsequent to the rendition of the judgment, but rests upon an agreement previously entered into, which induced its confession; and in addition to this, a perpetual injunction is prayed upon an allegation of facts showing Barclay should not be required to pay Spence, and if he does, the money may be immediately demanded by the complainant under the execution, of which he is assignee. In this view of the case, it is clear that the relief sought cannot be afforded by a *supersedeas* and a consequent motion to quash. Lockhart et al. v. McElroy, 4 Ala. Rep. 572. A court of equity is alone competent to furnish a complete remedy by making a definitive adjustment of the rights of the parties, and to entitle the complainant to relief in this tribunal, it must in the posture of the case made by the bill be an immaterial inquiry whether Spence and sureties are able to respond to the demand which the complainant might im-

mediately make, if he were to satisfy Barclay's judgment. It is quite enough in resisting the enforcement of that judgment for him to stand upon his contract.

The discharge by Barclay of Spence from the payment of certain demands due upon their private dealings cannot be recognized as a satisfaction of the bid of the latter. If Spence returned the executions satisfied, upon proof of these facts, the court from which they issued would cause the return to be vacated. The mandate of a *fieri facias* requires the money to be made, and it is not complied with, if the officer to whom it is entrusted receives demands against himself in payment. Cook & Lamkin v. Bloodgood, 7 Ala. Rep. 683. If then, the allegation of the bill upon this point be true, Barclay can claim nothing from the settlement he made with Spence, and the event upon which he can enforce his judgment against the complainant not having happened, his execution should be enjoined.

It would operate great injustice to the securities of Spence, if Barclay should be allowed to satisfy his purchase of the land in the manner alleged in the bill, and thus make them liable to the complainant. Indeed it may well be questioned whether they are obliged to acquiesce in such an adjustment, or whether they could not coerce a payment in money from Barclay, if necessary to their own protection. But however this may be, the complainant we have seen may still treat the matter as open between Barclay and Spence.

Thus far we have considered the case upon the bill alone, we will now enquire whether its essential equity is denied by the answer of Barclay. This defendant denies that the judgment was confessed "upon the distinct agreement" that no money should be paid, or execution issue and be levied thereon, unless he should be compelled to pay the amount which he bid at the sale by Spence to some of the creditors of W. H. M., whose executions were in his (Spence') hands. He does not know that the complainant is the assignee or proprietor of any judgment or lien which the Branch Bank at Montgomery may have owned, and therefore calls for proof of the bill on this point. It is admitted however, that the defendant did not pay Spence the amount of his bid for the land until several years after the complainant's purchase, and the pay-

ment was not made in money, but as follows: In the fall of 1846, a judgment was rendered in favor of Tomkies against Spence and Barclay as his surety, for nine hundred ninety-nine dollars and eighteen and three-fourth cents including costs, founded on a note given by the former as principal, and the latter as his surety. By agreement between Spence and Barclay, the latter satisfies Tomkies' judgment, and discharges Spence from the payment of certain sums which he was owing him, Barclay, and his partner, all which amounted to a 'sum equal to that at which Barclay bid off the land at the sheriff's sale, with interest thereon, and in consideration thereof Spence discharged Barclay from the payment of the purchase money for the land.

It is needless to enquire what would be the rights of the parties in a court of law, conceding as he must do upon a motion to dissolve the injunction the truth of the answer, so far as it negatives the allegations of the bill. In undertaking to execute to the complainant a quit claim deed to the land in the manner, and for the consideration expressed in his answer, Barclay impliedly affirmed, not only that he had bid it off and had the sheriff's deed, but that he had paid for it so as to make his deed operative against W. H. M., and the parties whose executions were in the sheriff's hands when the sale was made. The acceptance by the complainant of a deed for a part of the land after Barclay informed him that he had not paid Spence, but had promised to do so whenever required, did not relieve Barclay from making such payment, if he would make the contract obligatory upon the complainant, at least to the extent of money due to the sheriff. It may be that if a sheriff receive in payment of an execution a discharge from a debt owing by himself to the defendant, that the sheriff and his sureties are estopped from showing that it was not paid with money. But however this may be, the plaintiff is not bound to resort to his remedy against the sheriff and his sureties, but may move to vacate the return of satisfaction and have another execution issued and levied, or if its predecessor had been levied on property which had been thus sold and paid for, he could cause the execution to be levied and the property resold. If the law were not so, the plaintiff might lose his debt if the sheriff and his sureties were insolvent.

Moore v. Barclay et al.

The execution is the sheriff's warrant, it is in the nature of a special authority, and we have seen it requires him to make the sum collectable in money, and does not authorise him to receive something else as an equivalent; if he does so, his act is beyond the scope of his legitimate powers, and may be avoided at the election of the plaintiff in execution.

The allegation that the complainant is the assignee of a judgment and execution which entitles him to the money which Barclay should pay Spence in order to consumate his purchase, is not denied, so as to authorise the conclusion upon the motion to dissolve the injunction, that it is untrue. If then we look to the contract alone, Barclay should not be allowed to enforce his judgment, because he has not perfected his purchase so as to acquire any title. This we said he was bound to do by the payment of the sum at which he bid off the land. The assignment under which the complainant claims, makes him in equity a creditor by judgment and execution, and entitled to all the privileges and advantages which one thus situated may exercise. We have seen that it would be competent for him to move to vacate the sale to Barclay, because no such payment has been made as the law recognizes. If he could do this, why should he be compelled to pay Barclay the confessed judgment when he will not thereby perfect his title. Having notice of the manner in which Spence was paid, if all creditors were out of the way, could not W. H. M., object to the validity of the sale by the sheriff, and even assert his title against the complainant. Again: supposing the complainant should pay Barclay, he could not re-sell the land under his execution, without losing the land, or what he had thus paid. And if Spence and his sureties were insolvent, would he not lose either the amount paid his execution, or the land, as W. H. M. could not be called on a second time to satisfy the execution. It may perhaps also be asked whether the sureties of the sheriff if they were required to satisfy the complainant's executions have not equitable rights, which entitle them to be subrogated to all securities the complainant may make available, and if he were to yield up the right to enforce satisfaction from the land, could not the sureties in a court of chancery insist that they should be discharged *pro tanto.* These are questions, which the decision of the case as now present-

ed, does not make it necessary to solve, yet they are suggested by the record, and may be wothy of consideration in the progress of the cause.

Viewing the complainant as a creditor of W. H. M., by judgment and execution, which entitle him to the money that Spence should have collected of Barclay, as well as a purchaser from Barclay, and we are clearly of opinion, that the judgment against the complainant should not be enforced. We have stated the grounds upon which this conclusion is rested sufficiently to make ourselves understood. A court of equity is competent to consider the case as it may be deduced from the pleadings and make such a disposition of it as will effect complete justice according to law.

We have not thought it necessary to consider whether the notice of the motion to dissolve the injunction should not have designated the place at which it would be made before the chancellor, or whether this court will regard an irregularity in the notice, on appeal from the order of dissolution as an available error. Be this as it may, we have seen that the injunction should not have been dissolved. But even if the act requiring a notice, is merely directory (a point upon which we express no opinion,) we incline to think that a correct practice requires that the notice should be so precise as to inform the complainant when and where the motion will be submitted.

We have not done more than merely look into the answer of Spence, as it had no influence upon the decision of the chancellor, there being exceptions to it which were undecided. But our impression is that it contains nothing, if the exceptions were disposed of, that would induce a result more favorable to the defendant. We however leave all questions which may arise upon it for future consideration. We have but to add, that the order dissolving the injunction is reversed, and the cause remanded.

CHILTON, J., not sitting.